J. W. SHAAK, ADMR., v. C. H. MEILY.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF LEBANON COUNTY.

Argued February 18, 1890—Decided October 6, 1890.
[To be reported.]

(a) In a suit by the administrator of the insured to recover from an as-
signee of a life insurance policy the money collected thereon by the
defendant from the insurance company, the defendant alleged that he
received the assignment in consideration, in part, of a debt due to a
firm of which he was a member:

1. It being shown that, at the time of receiving the assignment, the debt
due to the firm was charged upon the firm books against the defendant
and assumed by him, and that his partner would be under no liability
to him should a recovery be had in this suit, the partner was a compe-
tent witness for the defendant.

2. When a life policy is issued to a creditor who holds it as security for
his debt, the insured having a resulting equitable interest therein, a
parol equitable assignment of such interest by the insured to another
creditor, perfected by a transfer of the legal title from the beneficiary,
may be valid as against the administrator of the insured.

3. In an action by the administrator of the insured against such assignee,
for the proceeds of the policy collected by him, proof of the fact that,
before the assignment of it to the defendant, the beneficiary named in
the policy had made a general assignment for the benefit of creditors,
will not in any way aid a recovery by the plaintiff.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 283 January Term 1889, Sup. Ct. ; court below, number
and term not shown.

VOL. CXXXVI—11

### Statement of Facts.

On August 10, 1887, John W. Shaak administrator of the estate of George Fisher, deceased, brought assumpsit against Charles H. Meily for money had and received. Issue.

At the trial on March 7, 1888, it was shown upon the part of the plaintiff that in March, 1873, George Fisher, the plaintiff's decedent, made application to the United Brethren Mutual Aid Society of Pennsylvania, for an insurance upon his life in the sum of $3,000, in favor of E. Z. Kehler, who was not related to Fisher but was his creditor for an amount under $100, and on March 12, 1873, in pursuance of that application, the society issued a policy or certificate of insurance to Kehler; that Kehler paid the original premium upon the policy, and also all the annual and assessment dues thereon until June 6, 1874, when he assigned the policy to the defendant, who paid all the assessments which became due upon it thereafter; that Fisher died sometime in 1876, and on March 4, 1876, after his death, the society paid to the defendant Meily, upon the policy, the sum of $2,763.52. A. S. Light, being called by the plaintiff, testified that on June 4, 1873, the witness was appointed assignee for the benefit of creditors of E. Z. Kehler. The plaintiff then rested.

The defendant called Joseph R. Euston, who testified, under objection, that the witness was an agent of the United Brethren Mutual Aid Society; that both before and after the policy in Kehler's favor was taken out, Fisher told the witness that he was indebted to Kehler and the policy was for the payment of his debt to Kehler; that a short time before the date of the assignment of that policy from Kehler to Meily, Fisher spoke to the witness about making an application for another policy, to be made in favor of Meily and Adolphus Reinoehl; but such an application was never made, the witness being subsequently informed, either by Fisher or by some one else, that other arrangements had been made.

A. Stanley Ulrich testified for the defendant, under objection, that Fisher told the witness that he, Fisher, had got Kehler to assign the policy to Meily for the latter's security, but did not say on what account the assignment was made; that the witness knew that Meily was bail on two notes given to a building association, of which the witness was secretary, as security for loans made to Fisher. The witness produced

the notes referred to, both of which were dated in 1868, one being for $477, signed by George Fisher, Adolphus Reinoehl and Chas. H. Meily ; the other being for $292, signed by George Fisher and Adolphus Reinoehl. The witness testified that Meily was treated as being bail on the second note ; that the notes were held until 1877, the final payment upon them being made March 7, 1877 ; that some of the monthly payments on the loans were made by Reinoehl & Meily, but that in 1872, George Fisher made an arrangement with Philip Fisher, under which George conveyed his house to Philip who made all the payments after that; that if the loans had been paid up at the date of that arrangement, the amount required for that purpose would have been $590. The witness also produced certain books of the building association, exhibiting the transactions connected with the loans to Fisher, which were offered and admitted in evidence for the defendant against the objection of the plaintiff.

The defendant then called Adolphus Reinoehl, and offered to prove by him conversations had with Fisher and Kehler before, at the time of, and immediately after the assignment of the policy by Kehler to Meily, to show that the assignment was for the purpose of securing indebtedness from Fisher to Meily, and indebtedness of Fisher to Reinoehl & Meily, at that time assumed by Meily. The plaintiff objected to the witness as incompetent, upon the ground that, as a partner of the defendant in the firm of Reinoehl & Meily, he was interested in the result of the suit, and to the proposed testimony as incompetent and inadmissible for the purpose stated. In connection with the objection to the competency of the witness, the plaintiff offered to ask Kehler whether, at the time he assigned the policy to Meily, there was any arrangement between Meily and himself with regard to what should be done with it. Being asked the purpose of the proposed question to Kehler, the plantiff's counsel stated it as follows:

" The purpose is to show that at the time when this arrangement was made, and this transfer was effected by Mr. Kehler to Mr. Meily, the understanding between them was that a debt which was due from Kehler to Meily, and a debt which was due from Kehler to Reinoehl & Meily, were to be paid out of this money, after it had been received from the aid society on

Statement of Facts.

this policy; and I think I can show by him, furthermore, that the balance of the money was to be paid back to him after deducting the amount of premiums, and the amount of interest of the claims of Meily, and Reinoehl & Meily, against Kehler; this for the purpose of showing that, by this arrangement as to the payment of the claim of Reinoehl & Meily against Kehler, and its payment out of this money after it was received of the aid society, he was interested through the receipt of this money by the firm of Reinoehl & Meily; that his firm would be liable to Meily, if a verdict were against Meily here; that a verdict in this proceeding could be used against Meily in order to recover against the firm of Reinoehl & Meily, and for that reason he would be incompetent as a witness."

By the court: The only question is whether Reinoehl would be affected by this verdict in case it should go against Meily.

The court then called Reinoehl, had him sworn, and examined him upon his voir dire as follows:

" Q. Have you an interest in the result of this suit? A. No, sir. Q. If there is a recovery against Mr. Meily, are you liable to him for any part of it? A. No, sir, I am not liable to pay anything back, if I am not disposed to do so; for he assumed the arrangement at the time he agreed to assume the debt to Reinoehl & Meily, and that satisfied me, and there was no debt further. Fisher had offered me a policy prior to this to cover this. Q. I want to know whether you are in any way liable? A. I told Meily, whether he would include the Fisher claim that we had against him, as Reinoehl & Meily, and he said he would. Q. Have you received any of the money that was received on this policy? A. No, sir, not a cent. Q. Has it gone into the firm? A. No, sir. Q. The money that was received on this policy, has that gone into the firm? A. The money received for Reinoehl & Meily has, but nothing else. We were afraid we would not get that money, but we got the benefit of it. He keeps the cash book, and Meily charged himself with that claim. Q. By the payment of this money, those debts were paid, and to that amount those debts went into the partnership. Is that not correct? A. The partnership matter was all between Meily and Kehler, and that paid to Meily, he said he would assume that debt, and that satisfied me. Now it is optional with me whether to assume that debt or not."

By the court: Although the witness has an interest in a part of the proceeds that are now claimed, nevertheless the objection is overruled. We think the interest does not disqualify, and the witness is decided to be competent; exception.[5]

Reinoehl was then examined as a witness and testified to a conversation with George Fisher, in which Fisher told the witness that the assignment of the policy made by Kehler, was to secure a debt Fisher owed to the firm of Reinoehl & Meily; that this debt was about $120; that at the same time Fisher was indebted to Meily for money borrowed, to a considerable amount, but how much, the witness did not know.

Other testimony for the defendant tended to show that Fisher frequently borrowed money from Meily. Thomas G. Spangler testified for the defendant that, at the date of the policy, Fisher's expectation of life was 20.20 years; that if Fisher had lived out that period, the assessments and dues upon the policy would have amounted to $2,206.80, and, allowing interest upon the payments, the total amount invested in the policy, at the end of the expectancy of life, would have been $3,530.88.

The defendant having rested, the plaintiff's counsel made this motion:

Plaintiff's counsel move to strike out the testimony of Joseph R. Euston, A. Stanley Ulrich, and Adolphus Reinoehl, and the books which have been offered in evidence here in connection with the alleged declarations and suggestions of George Fisher as to the disposition of this policy, and his interest in it; for the reason that Fisher's interest in the policy and in the insurance could not be passed to Meily for the purposes claimed, nor for Meily's use, in any respect, by a mere verbal agreement, suggestion or declaration, such as have been testified to, and without notice thereof to the aid society, or having been brought home to Kehler. Only by some memorandum or instrument showing a transfer or delivery of his interest in the policy; something to substitute Meily in place of Fisher as the owner, with full power to exercise every species of dominion over Fisher's interest therein and right thereto, and a renunciation of Fisher's power over it, could the right of Fisher and of his administrator to the insurance be divested.

By the court: We think this motion will have to be re-

fused. The apparent legal title to the policy was in Kehler, and had passed apparently by the assignment made by him to Meily. The only title that Fisher had in the policy was an equitable title, which could be assigned by parol; and we think, therefore, it will be a question for the jury to determine whether he did pass the title or not, or whether there was a consideration to support the passing of this title, if he did attempt to do so. Therefore, the motion is overruled, and we refuse to strike out the testimony; exception.[11]

Kehler then testified in rebuttal, for the plaintiff, that he made the assignment of the policy to Meily to secure debts which the witness owed to Reinoehl & Meily, and to Meily individually, and that after the payment of these debts, the witness was to have the balance of the proceeds of the policy; that after Meily had collected the policy, Reinoehl & Meily took out of it the debts due them from Fisher, saying that " he was indebted, and it was not more than right if that was paid;" that the witness had no knowledge before that, so far as he could remember, of Fisher's indebtedness to Meily and to Reinoehl & Meily, and he remembered nothing of Fisher's having anything to do with the arrangements respecting the making of the assignment to Meily. The plaintiff then put in evidence the record of the deed of assignment for the benefit of creditors, from Kehler to A. S. Light, dated June 4, 1873, and other records showing that Light entered upon the performance of his duties as assignee.

The testimony being closed, the court, SIMONTON, P. J., charged the jury in part as follows:

On March 12, 1873, the U. B. Aid Society issued a certificate of membership to Edward Z. Kehler upon the life of George Fisher for $3,000. Fisher afterwards died, and the money on that policy, at least the amount of it that has been testified to here, $2,763.52, was paid by the society to Charles H. Meily; and this action has been brought by the administrator of Fisher, appointed after his death, to recover that money from Meily.

The question for you to determine, in this case, is whether the plaintiff, the administrator of Fisher, is entitled to recover that sum or not, or any part of it. As we have said, Kehler

Charge of Court below.

was made the beneficiary of this policy, or certificate of membership, as it is called. You heard his testimony on the stand, from which it appears that at that time Fisher was indebted to him in some amount: I understood him to say less than $100; or, not more than $100. How did he take the policy then? is the first question. What was the arrangement between him and Fisher? Did he take that policy as collateral security for his debt? If he did, when his debt was paid the balance of it would belong to Fisher. Or did he take it as a speculation? If he did, the balance of it would belong to Fisher, in either case, and our Supreme Court have said that where a policy is taken for as large an amount as $3,000, and the debt that is owing at the time to the beneficiary from the person whose life is insured is $100 or less, the Supreme Court have said that of itself is evidence that it is a speculation, a wagering policy; and that being the case, the proceeds would belong to the estate of the man who was insured.

In either case then, whether Kehler held this as collateral security, or held it as a wager policy, having a debt of less than $100 to be secured by it, Fisher's estate would be entitled to the proceeds of the policy, less the amount of the debt and whatever Kehler paid in premiums and dues, and matters of that kind. So that Kehler would not have an absolute legal title to the proceeds of the policy; and, not having a right to the proceeds, he would not have a right to assign the policy.

He did, however, assign it. The policy was issued on March 12, 1873; and on June 6, 1874, Kehler did assign it to Meily, the defendant in this suit. As we have said, that assignment, taken by itself, would amount to nothing, for the reason that Kehler did not have a right to assign it, because he did not have a legal interest in the policy itself and its proceeds; either because he held it as collateral security, or because it was in law a wagering policy. As I understand it, Kehler assigned it in order to secure a debt that he owed to Meily. He could not have secured his debt with a policy, or the proceeds of a policy, that did not belong to him.

But the defence here say that the assignment was made with the knowledge and consent, and by agreement with Fisher. And we say to you that, if that be so, the assignment might be good. Fisher would have a right to agree, if he

Charge of Court below.

chose, that his interest in that policy should be assigned. Kehler could assign his interest; he could assign the apparent legal title to the policy, the company consenting to it, and Fisher could agree without a writing: on sufficient consideration, Fisher could agree that his interest should pass to Meily.

The next question for you to determine then is, did Fisher so agree? . . . . . If Fisher did agree to it, then did he agree to it on a proper consideration, or was it a speculation? You are to determine that by finding what the consideration was. . . . . Was the assignment from Fisher, or the agreement with Fisher that his interest should pass to Meily, if there was such an agreement, was it made by him honestly, and for the purpose of securing the debt that he owed, and the liability on those notes? If it was, and if the proportion to the amount which he owed, and the liability which existed, if the proportion which that bore to the amount of the policy was such that you can come to the conclusion that it was an honest and fair transaction, then it was what the parties had a right to make. . . . .

In that connection we call attention to the evidence that was given as to the expectation of life of the insured, which means that on an average a person of Fisher's age, taking a thousand persons, or several thousand persons, such a person would live about 20 years. Now, in order to make a policy good for that time, the assessments would have to be paid up for all that time, and any annual dues; and, therefore, if the amount would not turn out to be the amount of that debt, it would not turn out to be a security for that debt. While he might die at any time, he might live beyond the average time, and therefore he has a right to take out a policy for a great deal more than the amount of the debt. So the jury will have to consider, then, whether, taking into consideration the fact that the policy might run a good many years before he would realize upon it, taking into consideration the proportion between the amount of the insurance and the debt, the jury are to consider whether upon the whole it is an honest transaction, taken for the purpose of securing the debt.

It is argued here by the counsel for the plaintiff that Kehler knew nothing about this arrangement between Fisher and Meily, if there was any such arrangement; and that seems to have been Kehler's testimony. You will remember that. We

do not consider, however, that that would be conclusive against the honesty of it.  That arrangement might have been made between Fisher and Meily, without Kehler's knowledge. . . . .

[If you find that Fisher did transfer his interest in the policy, then you are still to consider what was the nature of that transfer; whether it was an absolute transfer, or whether it was as collateral security.] [4]  There is no writing, you remember, between Fisher and Meily, and any transfer that Fisher made, if he did make a transfer, was by word of mouth, and depends upon the testimony of the witness.  [If he made an absolute transfer, and if it was an honest transfer of his whole interest in that policy, then Meily would have a right to keep all the proceeds.] [1]  Meily would gain in one sense, by Fisher dying soon, and in another sense he would have lost if Fisher had lived 25 or 30 years.  It might have taken the whole of the proceeds of the policy to keep up the policy that length of time.

If the transfer simply was collateral, if the agreement between Meily and Fisher was that Meily should hold Fisher's interest in this policy as collateral for his debt, so that if Fisher at any time paid the debt, that the interest was to come back, or, so that if Fisher died the balance would come back to Fisher, of course the balance would have to come back.  And you will have to determine then how much Fisher owed Meily, how much it would take to make Meily whole, taking into consideration the amount of the debt, of whatever liability he incurred on behalf of Fisher, and whatever premiums he paid to keep up the policy, and all of that, and your verdict then would have to be according as you find the one and the other.

Perhaps we ought to say that Kehler says that he made the transfer for the purpose of securing his own debt to Meily. I think we have said to you that he could not transfer Fisher's interest for that purpose.  Fisher might, as we have said, agree to let Kehler make the transfer, and might agree that whatever Fisher owned should go either as security for his debts, or absolutely in payment of his debts. . . . .

The plaintiff requests the court to charge you:

2. At the most, Kehler's interest in the life of Fisher, and the amount which he could lawfully secure by an insurance on the life, was the amount of his debt with interest thereon for the duration of Fisher's life, according to accepted tables

Charge of Court below.

of mortality, and the necessary premiums, to secure the debt, and its interest, and the interest on such premiums, also for his life expectancy. Anything and everything beyond this amount of principal and interest and premiums and interest was speculative. Such surplus received from the aid society on the said insurance on the life of Fisher by Meily, the defendant, belongs to the estate of Fisher, and the verdict of the jury must be for the plaintiff therefor, with interest.

Answer: That is refused.[6]

3. The policy having been issued to Kehler by the aid society, Fisher lost entire control over it, or of the amount to be paid on it, during his lifetime; as the designation of the beneficiary and the issuing of the certificate to Kehler, his heirs and assigns, were a portion of the contract between Fisher, the aid society and Kehler, it was the creation of a trust in favor of Kehler, his heirs and assigns.

Answer: To that we say, it is refused in its application to this case. Fisher could not destroy any interest Kehler might have in the policy; but if the law, under the facts in this case, leaves an interest in Fisher, he could control that, at least with the consent of Kehler.[8]

4. The policy, and the insurance under it, never were the property of Fisher: they were Kehler's, without reservation, until the assignment to Light for creditors, before the indorsed assignment to Meily; and Fisher could not in any way control the policy or the designation of the beneficiary, without the consent of the party of his unhampered appointment, in this case, Light, the first assignee of Kehler, who accepted and entered on his trust as assignee for creditors; and any arrangement with Fisher and Kehler, without the assent of Light, was inoperative and void as not between the proper parties, and, if made, not binding on the estate of Fisher, whose rights attached only on the receipt of the insurance money from the aid society by the defendant.

Answer: That is refused.[9]

5. Meily took from Kehler, and the standing of Kehler in this transaction was the standing of Meily; and, as Kehler possessed no standing or rights in the insurance on Fisher's life, in question, having already assigned all his choses in action, of which this policy and insurance was one, to A. S.

Charge of Court below.

Light, as assignee for creditors, under which assignment Light got an absolute title to such chose in action, Kehler's assent to the alleged arrangement with Fisher as to the change of beneficiary, even if made, would have availed Meily nothing, and given him nothing to tack his alleged claims to, as Kehler had nothing to assent to or to give, having already parted from the ownership of the policy to Light.

Answer : That is refused.[10]

6. The alleged parol arrangement or promise of Fisher to give the policy and its proceeds to Meily, even if made with the assent of Kehler, did not vest in Meily the ownership of the policy and the right to the proceeds after Fisher's death. Neither Fisher nor Kehler had any right thereto or ownership therein at the time of the transfer to Meily. At the time, the policy was Light's, as assignee; the fund itself had no existence, the contingency of Fisher's death not having happened, and the good standing of the policy at Fisher's death, by reason of the compliance with the conditions, was not determined. The alleged act of Fisher would not have constituted an equitable assignment, even if made, as he had nothing to assign, and Meily could not have recovered from the aid society on it, coupled with Kehler's assignment to him, if the prior assignment by Kehler to Light had been interposed as a bar.

Answer : That is refused.[2]

9. The procuring of a policy of $3,000 by Kehler, to cover a debt of less than $100 was of itself a mere wager.

Answer : As we have said in our charge, that, standing by itself, would be so.[7]

10. There is no evidence upon which could be based the assumption that the policy was to be taken by Meily as an insurance to and by a creditor ; but, even under the widest construction of the defendant's evidence, it was held by Meily as collateral security for certain debts, of which but one, that of Reinoehl & Meily, amounting to $120, has been proved.

Answer : That is refused.[3]

The jury rendered a verdict for the defendant. A rule for a new trial having been discharged, judgment was entered on the verdict ; whereupon the plaintiff took this appeal, assigning for error :

Arguments.

1. The part of the charge embraced in [ ] [1]
2, 3. The answers to plaintiff's points.[2] [3]
4. The part of the charge embraced in [ ] [4]
5. The admission of Reinoehl as a competent witness.[5]
6–10. The answers to plaintiff's points.[6 to 10]
11. The overruling of plaintiff's motion.[11]

*Mr. Bassler Boyer*, for the appellant:

1. That the policy on the life of George Fisher was a wagering policy from its inception, cannot be questioned. No recovery against the company could have been had upon it by any person. Nor could Fisher's personal representatives have recovered from Meily or Kehler, by any proceeding in law or equity, except upon the simple implied contract created by the law directly upon the receipt of the money from the insurance company, and this liability is created solely for the purpose of enforcing the public policy which condemns such wagering transactions: Gilbert v. Moose, 104 Pa. 74; Wegman v. Smith, 16 W. N. 186; Scott v. Dickson, 108 Pa. 6; Seigrist v. Schmoltz, 113 Pa. 330; Downey v. Hoffer, 110 Pa. 109; Corson's App., 113 Pa. 438; Cooper v. Shaeffer, 20 W. N. 122; Dalbey v. Insurance Co., 15 C. B. 365. Fisher, accordingly, had no property in the policy, which he could dispose of even by will. His estate was purely post mortem, created by the law, and resulting from the fact of the payment made by the insurance company after his death: Wegman v. Smith, supra; Downey v. Hoffer, supra. No transfer made by him could confer on Meily the right to retain this money now.

2. At the time of the attempted assignments of the legal title from Kehler to Meily, and the alleged equitable assignment by Fisher, the legal title to the policy was in Light as assignee for the benefit of creditors of Kehler, and neither Kehler nor Fisher had any property in it, legal or equitable, which he could assign: Benford v. Sanner, 40 Pa. 15; Wylie's App., 92 Pa. 199; Tyson's Est., 2 Pears. 479; Elliott's App., 50 Pa. 79; Bliss on L. Insurance, §§ 317, 318, 328, 331; Schondler v. Wace, 1 Camp. 487; Seal v. Duffy, 4 Pa. 277. Even if Fisher had some equitable interest in the policy, his declarations, as testified to, would be insufficient to constitute an equitable assignment: Benford v. Sanner, supra; Wylie's

Opinion of the Court.

App., supra; Tyson's Est., supra. The arrangement between Fisher and Meily was at most, under the testimony, for security to Meily against a pre-existing liability, and it was error to submit to the jury whether there was an absolute transfer of Fisher's interest. And, moreover, as already argued, Fisher's designation of Kehler as the beneficiary left in him no property to transfer. This question is directly ruled in McCutcheon's App., 99 Pa. 137. See also Bliss on L. Insurance, §§ 317, 318. Moreover, Reinoehl was incompetent, being prima facie liable to Meily in the event of our recovery: Wheeler's Est., 8 W. N. 534; § 5, act of May 23, 1887, P. L. 158.

*Mr. W. M. Derr* (with him *Mr. F. E. Meily*), for the appellee.

Counsel cited: (1) As to the effect of the allegation that the title to the policy was in Light as Kehler's assignee: Berks Co. v. Levan, 86 Pa. 360; Armstrong v. Lancaster, 5 W. 68; Luckenbach v. Brickenstein, 5 W. & S. 145; Mellon's App., 32 Pa. 121. (2) As to the validity of the policy if a wagering contract: Meily v. Hershberger, 16 W. N. 186. (3) As to the insurable interest of Meily in Fisher's life: Scott v. Dickson, 108 Pa. 6; Grant v. Kline, 115 Pa. 618. (4) As to the competency of Reinoehl: Bennett v. Hethington, 16 S. & R. 195; Ott v. Houghton, 30 Pa. 453; Ferree v. Thompson, 52 Pa. 354. (5) As to the validity of a verbal assignment of Fisher's interest in the policy: 1 Am. & Eng. Ency. of Law, 835; Dunn v. Snell, 15 Mass. 481; Patten v. Wilson, 34 Pa. 299.

OPINION, MR. CHIEF JUSTICE PAXSON:

This suit was brought in the court below by John W. Shaak, administrator of the estate of George Fisher, deceased, to recover the amount of a life policy issued by the U. B. Aid Society to the said Fisher in the sum of $3,000. The facts as alleged by the defendant and found by the jury are, that Fisher in his application directed the policy to be issued to E. Z. Kehler, as the beneficiary, and that it was so issued; that Kehler was a creditor of Fisher in about the sum of $100, and had therefore an insurable interest; that Kehler paid the premiums for some time and then assigned the policy to Meily, the defendant, who was a creditor of Kehler; that Meily, and also

Opinion of the Court.

the firm to which he belonged, Reinoehl & Meily, were also creditors of Fisher, the assured; and that Fisher assented orally to the transfer from Kehler to Meily. Upon the. death of Fisher the aid society paid the money over to Meily, and this suit was brought by the administrator of Fisher to recover it from Meily. The principal grounds upon which this claim was rested were, (*a*) that as to Kehler it was a gambling policy; (*b*) that no title passed from Kehler to Meily, because the latter, while the holder of the policy, had made an assignment for the benefit of his creditors, and that by reason thereof the policy, as a chose in action, passed to his assignee; and (*c*) that, in any event, the policy being a mere gambling transaction, Fisher had no such interest or control over it as enabled him to consent to its transfer by Kehler to Meily. The two last propositions may be dismissed with the remark that each of them is a two-edged sword; for, if the policy passed by Kehler's assignment to his creditors, what interest or right has the administrator of Fisher in it? And, if Fisher had no such interest in it as to give him the right to assent to its transfer to Meily, it is equally difficult to see the interest of his administrator. The first proposition has been negatived by the verdict, so that, unless some error is apparent upon the trial, the judgment must stand.

A careful examination of the charge and the answers to points fails to disclose any substantial error in that part of the case. The fifth assignment alleges that the learned court erred in permitting, against objection, the witness Reinoehl to testify as to conversations with Fisher occurring during his lifetime. The ground of the objection was that this was a suit by the administrator of Fisher, and that the witness was interested. As I understand the case, when Meily received the assignment of the policy he assumed the debt due by Fisher to his firm, and it was charged up against him on the books thereof. The witness was examined on his voir dire as to his liability to pay any portion of the money back to Meily in case a judgment was recovered against him in this suit, and he flatly denied any such engagement or liability. I am unable to see how the witness can be affected by the verdict in this case. He expressly stated, "Now it is optional with me whether to assume that debt or not." When the witness Reinoehl was called, his

competency was objected to by the plaintiff, who endeavored
to prove his interest aliunde and for this purpose called E. Z.
Kehler to the stand.   This witness did not prove anything,
however.   The court then called the witness Reinoehl and ex-
amined him on his voir dire, with the result as before stated.
It will be noticed that the only objection to the witness was
to his competency.   No exception appears to have been taken
to the manner in which the competency of the witness was
established.   The eleventh assignment alleges that the court
erred in not striking out the testimony of several witnesses,
as well as a large portion of the documentary evidence; indeed,
pretty much all that was of value to the defendant's case.
The learned judge did not see his way clear to do this, in
which we think he was right.

Judgment affirmed.